STATE of Tennessee, Appellee,

v.

Michael Joe BOYD, Appellant.

Supreme Court of Tennessee,
at Jackson.

Jan. 5, 1998.

Rehearing Denied March 2, 1998.

Paul J. Morrow, Jr., Office of the Post–Conviction Defender, Nashville, Daniel A. Seward, Memphis, for Appellant.

John Knox Walkup, Attorney General and Reporter, Michael E. Moore, Solicitor General, Kathy Morante, Deputy Attorney General, Nashville, John W. Pierotti, District Attorney General (at Trial), Terry Harris, Assistant District Attorney (at Trial), Memphis, for Appellee.

## OPINION

ANDERSON, Chief Justice.

The issue in this post-conviction death penalty appeal is whether the jury's reliance on an invalid aggravating circumstance was harmless error, or whether resentencing is required because there is reasonable doubt that the sentence would have been the same had the jury given no weight to the invalid aggravating factor. The jury relied on a valid aggravating factor, that the defendant had a prior conviction for a violent felony offense (second-degree murder), and an invalid aggravating circumstance, that the victim was killed during the commission of a felony.[1]

A majority of this Court held in *State v. Middlebrooks*, 840 S.W.2d 317 (Tenn.1992), that the felony murder aggravating factor found in Tenn.Code Ann. § 39–2–203(i)(7) duplicates and mirrors the elements of the offense of felony murder and therefore, when applied as an aggravating factor to a felony murder conviction, it fails to narrow the class of death eligible defendants as is required by article I, § 16 of the Tennessee Constitution.[2] After conducting a harmless error analysis, however, both the trial court and the Court of Criminal Appeals concluded beyond a reasonable doubt that under the facts of this case the sentence would have been the same had the jury given no weight to the invalid aggravating factor. Both courts denied the post-conviction petition. We agree and affirm the Court of Criminal Appeals' judgment.

1. Although the appeal was also granted on the issue of who properly represents the defendant, i.e., his appointed counsel or the Post–Conviction Defender, the issue was rendered moot when appointed counsel requested and received an order from this Court allowing him to withdraw.

· 2. The *Middlebrooks* holding also applied to the felony murder aggravating circumstance as subsequently codified in Tenn.Code Ann. § 39–13–204(i)(7)(1990).

## BACKGROUND

The defendant, Michael Joe Boyd, was convicted of felony murder stemming from the shooting death of William Price during an armed robbery in November of 1986. Price and a companion, David Hippen, had solicited two women, Barbara Lee and Renita Tate, to accompany them to a Memphis motel. Upon their arrival at the Lorraine Motel, Price gave one of the women a $100 bill to rent two rooms. Michael Boyd, who was Lee's boyfriend, drove up to the scene with two other men and approached Price's van. Boyd pointed his pistol at Hippen and demanded money. Price grabbed Boyd's arm, Boyd fired the gun, and a struggle ensued. When Price tried to drive away from the scene, Boyd "emptied" the gun at him, striking him with five or six shots which caused his death.

The prosecution relied on three aggravating circumstances to seek the death penalty in the sentencing phase of the trial: (1) that the defendant had a prior conviction for a violent felony, (2) that the defendant knowingly created a risk of death to two or more persons other than the victim murdered, and (3) that the killing occurred in the perpetration of a felony.[3]

A judgment showing that the defendant had been convicted in 1983 for second-degree murder was introduced by the prosecution to support the prior conviction for a violent felony aggravating circumstance. In mitigation, Boyd testified that someone asked for change for a $100 bill and he was going to make change when Hippen pulled a gun. He said a struggle took place, during which Price was shot. Boyd testified that he was sorry the victim had been killed but that he did not intend to rob or shoot the victim.

The jury returned the sentence of death based on two aggravating factors, prior con-

viction of a violent felony and felony murder, and the conviction and sentence were affirmed by this Court on appeal. *State v. Boyd*, 797 S.W.2d 589 (Tenn.1990), *cert. denied*, 498 U.S. 1074, 111 S.Ct. 800, 112 L.Ed.2d 861 (1991). The defendant filed a petition for post-conviction relief that alleged numerous constitutional errors, including the violation of article I, § 16 of the Tennessee Constitution under *State v. Middlebrooks.* Following an evidentiary hearing, the trial court denied the petition. The Court of Criminal Appeals affirmed the denial. We granted this appeal and now affirm the Court of Criminal Appeals' judgment.

## ANALYSIS

In *Middlebrooks*, we determined that the felony murder aggravating circumstance set forth in Tenn.Code Ann. § 39–2–203(i)(7) duplicated and mirrored the elements of the offense of felony murder and, when applied to a felony murder, failed to narrow the class of death eligible murderers as required by article I, § 16 of the Tennessee Constitution and the Eighth Amendment to the United States Constitution.[4] We stressed that a proper narrowing device must provide

> a principled way to distinguish the case in which the death penalty was imposed from the many cases in which it was not ... and must differentiate a death penalty case in an objective, even-handed, and substantially rational way from the many murder cases in which the death penalty may not be imposed. As a result, a proper narrowing device insures that, even though some defendants who fall within the restricted class of death-eligible defendants manage to avoid the death penalty, those who receive it will be among the worst murder-

---

3. Tenn.Code Ann. § 39–2–203(i)(2), (3), and (7)(1982)[now Tenn.Code Ann. § 39–13–204(i)(2), (3), and (7)(1997)].

4. At the time of this offense, felony murder included "[e]very murder committed in the perpetration of, or attempt to perpetrate, any murder in the first degree, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or the unlawful throwing, placing or discharging of a destructive device or bomb...." Tenn.Code Ann. § 39–2–202(a)(1982)[now Tenn.Code Ann.

§ 39–13–202(a)(2)(1997)]. The felony murder aggravating circumstance provided "the murder was committed while the defendant was engaged in committing ... any first degree murder, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or unlawful throwing, placing or discharging of a destructive device or bomb." Tenn.Code Ann. § 39–2–203(i)(7)(1982)[now Tenn.Code Ann. § 39–13–204(i)(7)(1997)].

ers—those whose crimes are particularly serious, or for which the death penalty is particularly appropriate.

We concluded that it violates article I, § 16 of the Tennessee Constitution to use the felony murder aggravating circumstance to support imposition of the death penalty for a conviction of felony murder. 840 S.W.2d at 343–346. The felony murder aggravating factor may, of course, be used to support imposition of the death penalty if a defendant is convicted of premeditated murder, or if the felony used for the aggravating circumstance is different from and in addition to the felony used for the felony murder offense. *State v. Hines*, 919 S.W.2d 573, 583 (Tenn.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 133, 136 L.Ed.2d 82 (1996).

■ Because the *Middlebrooks* rule enhanced the integrity and reliability of the sentencing process, we have since applied the rule retroactively. *See Barber v. State*, 889 S.W.2d 185, 187 (Tenn.1994), *cert. denied,* 513 U.S. 1184, 115 S.Ct. 1177, 130 L.Ed.2d 1129 (1995). Accordingly, as both parties here recognize, the jury's reliance on the invalid felony murder aggravating factor was constitutional error properly recognized in this post-conviction proceeding.

■ The critical inquiry, therefore, is whether the error was harmless and whether a resentencing hearing is required. To assist in this inquiry, we review the analytical framework first announced in *State v. Howell*, 868 S.W.2d 238 (Tenn.1993), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994). There, we held that a *Middlebrooks* error does not require a resentencing hearing if the reviewing court concludes "beyond a reasonable doubt that the sentence would have been the same had the jury given no weight to the invalid felony murder aggravating factor." *Id.* at 262. Our holding was based on United States Supreme Court precedent in which that Court had said that if a jury considers an invalid or improper aggravating circumstance, either "constitutional harmless error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence." *Stringer v. Black*, 503 U.S. 222, 232, 112 S.Ct. 1130, 1137, 117 L.Ed.2d 367

(1992); *see also Richmond v. Lewis*, 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992); *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990).

In *Howell*, we adopted a harmless error analysis that guarantees the precision that individualized sentencing demands and provides a principled explanation for our conclusion in each case. We also stressed the need "to completely examine the record for the presence of factors which potentially influence the sentence ultimately imposed." These factors include, but are not limited to, "the number and strength of remaining aggravating circumstances, the prosecutor's argument at sentencing, the evidence admitted to establish the invalid aggravator, and the nature, quality, and strength of mitigating evidence." *Id.* at 260–61. Only after a thorough and critical consideration of these factors can a determination be made as to harmless error. *See, e.g., Sochor v. Florida,* 504 U.S. 527, 541, 112 S.Ct. 2114, 2123–24, 119 L.Ed.2d 326 (1992)(O'Connor, J., concurring)("appellate court's bald assertion that an error of constitutional dimensions was 'harmless' cannot substitute for a principled explanation of how the court reached that conclusion.").

We have since applied the *Howell* harmless error analysis on numerous occasions in which the jury considered an invalid aggravating circumstance in conjunction with one or more valid aggravating circumstances. In the following cases, the error was found to be harmless and the sentence was affirmed. *State v. Hines*, 919 S.W.2d at 583; *State v. (Sylvester) Smith*, 893 S.W.2d 908 (Tenn. 1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 99, 133 L.Ed.2d 53 (1995); *Barber v. State,* 889 S.W.2d at 187; *State v. Nichols*, 877 S.W.2d 722 (Tenn.1994), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); *State v. Cazes*, 875 S.W.2d 253 (Tenn. 1994), *cert. denied,* 513 U.S. 1086, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995); *State v. Howell*, 868 S.W.2d at 262. Conversely, we concluded that the constitutional error required resentencing in *State v. Walker*, 910 S.W.2d 381 (Tenn.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 88, 136 L.Ed.2d 45 (1996), and

*Hartman v. State,* 896 S.W.2d 94 (Tenn. 1995).

We disagree with the dissent's assertion that "the high standard for harmless error analysis set forth in *Howell* has been significantly compromised in some cases." On the contrary, the *Howell* analysis has been employed in the same manner in each case—the fact that some errors have been held to be harmless and others harmful underscores that an individualized determination must be made in each case.[5]

■ Applying the analysis in this case leads us to conclude that the error is harmless and does not require resentencing. The remaining aggravating factor relied upon by the jury was that the defendant had a prior conviction for second degree murder—a violent felony. We said in *Howell* that "even more critical than the sum of the remaining aggravating circumstances is the qualitative nature of each circumstance, its substance and persuasiveness, as well as the quantum of proof supporting it." Although the statute assigns no relative importance or weight to the aggravating circumstances, we observed that a prior violent felony conviction "may be more qualitatively persuasive and objectively reliable" than other factors. 868 S.W.2d at 261.

5. Though this Court and the United States Supreme Court previously had recognized that errors occurring during the sentencing phase of a capital trial may be reviewed under the harmless error doctrine by an appellate court, it was not until 1992 that the United States Supreme Court completely delineated the proper analysis to be applied by an appellate court when an invalid aggravating circumstance has been relied upon by the initial sentencing authority. *See Stringer v. Black,* 503 U.S. at 232, 112 S.Ct. at 1137–38; *Sochor v. Florida,* 504 U.S. at 540–41, 112 S.Ct. at 2123–24. This Court's decision in *Howell* delineating the proper harmless error analysis for a *Middlebrooks* error was not rendered until after our decisions in *State v. Evans,* 838 S.W.2d 185 (Tenn.1992); *Sparks v. State,* 1993 WL 151324, 1993 Tenn. Lexis 187; No. 03S01–9212–CR–00105 (Tenn., May 10, 1993); *State v. Bane,* 853 S.W.2d 483 (Tenn.1993); *State v. Smith,* 857 S.W.2d 1 (Tenn.1993); and *State v. Middlebrooks,* 840 S.W.2d 317 (Tenn.1992). Therefore, since all these decisions predated *Howell,* the dissent's reliance upon these cases as examples of the proper application of the *Howell* analysis is unwarranted.

Accordingly, the defendant's prior conviction for second-degree murder is a significant element to be considered in our analysis; in fact, we have affirmed the death sentence in all but one previous case in which a prior violent felony conviction supported the aggravating factor in Tenn.Code Ann. § 39–2–203(i)(2). *See State v. Hines,* 919 S.W.2d at 584 (assault in the first-degree); *State v. Smith,* 893 S.W.2d at 926 (robbery, assault with intent to murder, and aggravated rape); *State v. Nichols,* 877 S.W.2d at 738 (rape); *State v. Cazes,* 875 S.W.2d at 270 (aggravated rape and assault with intent to murder); *State v. Howell,* 868 S.W.2d at 261 (murder, aggravated robbery). In the remaining case, *State v. Walker,* the conviction was for voluntary manslaughter, a lesser grade of offense than second-degree murder. 910 S.W.2d at 398.

Turning to the second *Howell* factor, the record reveals that the prosecution did not emphasize the felony murder aggravating factor, Tenn.Code Ann. § 39–2–203(i)(7), in the sentencing phase. No additional evidence was introduced in support of the factor, and relatively little reliance was placed on it during the prosecutor's argument. Instead, the prosecution stressed the defendant's prior conviction throughout its argument as demonstrated by the following passage:

Moreover, in each of the cases that the dissent contends were "significantly compromised," the *Howell* analysis yielded a conclusion that the *Middlebrooks* error was harmless beyond a reasonable doubt. In *State v. Cazes, supra,* there were two remaining aggravating factors, prior convictions for a violent felony and heinous, atrocious or cruel. The prior convictions were aggravated rape and assault; no additional evidence or undue emphasis had been placed on the invalid felony murder aggravator during sentencing. In *State v. Nichols, supra,* five rape convictions supported the remaining factor of prior convictions for a violent felony; no additional evidence or undue emphasis was placed on the invalid factor. In *State v. (Sylvester) Smith, supra,* there were two remaining aggravating factors, prior convictions for a violent felony and heinous, atrocious or cruel. The prior convictions included robbery with a deadly weapon, assault with intent to commit murder, and aggravated rape. Accordingly, our application of these factors, as well as the mitigating evidence offered by the defendants, led to the same conclusion—that the error was harmless beyond a reasonable doubt.

The law also says if you kill once and then you kill again, it's okay for you to suffer the consequences of the death penalty. What does it take, ladies and gentlemen? How many people have to die before we put a stop to [the defendant]. Do we have to wait until he kills and kills and kills again? He's killed twice. You would think ... after killing once that a man like that, if he's got any conscience at all, would want to get as far away from a pistol, an instrument of death, as he could ever get.... It's good for nothing other than to kill other human beings. Twice [the defendant] used the same instrument of death. It's time ... to put a stop to it.

Finally, the balance of the State's argument was devoted to arguing the aggravating factor in Tenn.Code Ann. § 39–2–203(i)(3), that the defendant knowingly created a risk of death to two or more persons during the victim's murder, and to discrediting the testimony and credibility of the defendant. ·

Similarly, applying the third *Howell* factor, we observe that no additional evidence was admitted to support the invalid felony murder aggravating circumstance; the prosecution merely relied upon the evidence in the guilt phase. As we said in *Howell*, "an aggravating factor which duplicates the elements of the underlying crime has less relative tendency to prejudicially affect the sentence imposed than invalid aggravating factors which interject inadmissible evidence into the sentencing calculus, or which require the sentencing jury to draw additional conclusions from the guilt phase evidence." 868 S.W.2d at 261. Accordingly, the jury in this case heard no more evidence in support of the felony murder aggravating circumstance than had already been presented to prove the offense of felony murder during the guilt phase.

◼ Finally, we consider the final *Howell* factor—the nature, quality and strength of the mitigating evidence. In this case, the mitigating evidence was limited to the defendant's own testimony. Although the defendant argues on appeal that he showed re-

morse, it is significant that he did not accept responsibility for his part in the offense; instead he denied that he shot or robbed the victim. ·No other mitigating evidence was presented before the jury. We have considered all of the relevant *Howell* analytical factors in our review of the record, and have considered and applied the requirement for individualized sentencing and made a principled explanation for our conclusion. After doing so, we conclude beyond a reasonable doubt that the verdict would have been the same had the jury given no weight to the invalid aggravating factor.

The dissent concludes that a finding of harmless error cannot be based on objective facts and is therefore inappropriate. Notwithstanding evidence of a "set up" robbery and that the defendant "emptied" his gun while the victim tried to flee from the scene, the dissent contends that the killing occurred as a result of an altercation based on jealousy and that the defendant testified he did not intend to rob or shoot the victim. The dissent, however, does not apply the *Howell* factors that support an objective conclusion that the jury's verdict would have been the same even had it not considered the invalid factor. In particular, the dissent does not address the quality and strength of the remaining aggravator factor that was supported by the defendant's prior conviction for second-degree murder, nor, apparently, does the dissent place objective significance on the *Howell* factors that no additional evidence or emphasis was placed on the invalid felony murder aggravator during sentencing. Thus, the dissent takes issue solely with the majority's conclusion and not its methodology.

◼ Rejecting precedent, the defendant contends that our appellate review is improper for several reasons, all of which we have implicitly rejected in our formulation and continued application of *Howell*. First, he argues that he has a federal and state due process liberty interest to jury sentencing due to the mandatory language found in Tenn.Code Ann. § 39–2–203.[6] The case cited

---

6. The defendant cites, among other provisions, Tenn.Code Ann. § 39–2–203(a)(1982), the "jury shall fix punishment in a separate sentencing hearing", and Tenn.Code Ann. § 39–2–203(k)(1982), "a new trial on the issue of punish-

by the defendant in support of his argument, *Rickman v. Dutton,* 854 F.Supp. 1305 (M.D.Tenn.1994), however, recognizes that even if a due process liberty interest exists on the basis of these statutory provisions, constitutional harmless error analysis is not precluded. We, therefore, disagree with the defendant's assertion that these statutory provisions preclude appellate review of the sentence. Moreover, the United States Supreme Court has repeatedly held that constitutional harmless error analysis is appropriate in this context, provided that it preserves the constitutional requirement of individualized sentencing. *See, e.g., Stringer v. Black,* 503 U.S. at 232, 112 S.Ct. at 1137–38 (1992); *Clemons v. Mississippi,* 494 U.S. at 753, 110 S.Ct. at 1450–51.[7]

■ The defendant also argues that *Howell* conflicts with the constitutional harmless error test set forth in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and that, applying *Chapman,* the State cannot prove beyond a reasonable doubt that the error "did not contribute to the verdict obtained" because this jury did in fact rely on factors set out in Tenn.Code Ann. § 39–2–203(i)(7). Again we disagree. Our analysis in *Howell* is derived from relevant United States Supreme Court precedent that indicates not every verdict based partly on an unconstitutional or invalid aggravating circumstance requires resentencing, and that an error may be deemed harmless if it may be concluded beyond a reasonable doubt that the verdict would have been the same had the jury given no weight to the invalid factor. *See Stringer v. Black,* 503 U.S. at 232, 112 S.Ct. at 1137–38; *Clemons v. Mississippi,* 494 U.S. at 753, 110 S.Ct. at 1450–52. We view these decisions, and the test set forth in *Howell,* as the appropriate analysis and consistent with the *Chapman* harmless error test.

■ Finally, the defendant insists that application of *Howell* violates ex post facto, due process, and equal protection provisions

of the Tennessee and United States Constitutions because it had not been decided at the time of this offense, and because prior cases in which only one aggravating factor remained were remanded for resentencing. It is clear, however, that pre-*Howell* cases, existing at the time of the defendant's offense, had upheld death penalty sentences where the jury had relied on an invalid aggravating circumstance. *See State v. Bobo,* 727 S.W.2d 945 (Tenn.), *cert. denied,* 484 U.S. 872, 108 S.Ct. 204, 98 L.Ed.2d 155 (1987); *State v. Workman,* 667 S.W.2d 44 (Tenn.), *cert. denied,* 469 U.S. 873, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984); *State v. Cone,* 665 S.W.2d 87 (Tenn.), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2400, 81 L.Ed.2d 357 (1984); *State v. Campbell,* 664 S.W.2d 281 (Tenn.), *cert. denied,* 469 U.S. 920, 105 S.Ct. 302, 83 L.Ed.2d 236 (1984). Therefore, *Howell,* which sets forth a principled means of review in a manner that preserves individualized sentencing, does not violate ex post facto, due process, or equal protection provisions.

### *CONCLUSION*

Our review of the record leads us to conclude beyond a reasonable doubt that the jury's verdict would have been the same had no weight been given to the invalid aggravating circumstance, and that the jury's consideration of the invalid aggravating circumstance was harmless error. Therefore, the jury's reliance on Tenn.Code Ann. § 39–2–203(i)(7), although constitutional error, does not require resentencing. Accordingly, we affirm the judgment of the Court of Criminal Appeals denying the post-conviction petition. The sentence of death will be carried out as provided by law on the 5th day of May, 1998, unless otherwise ordered by this Court, or other proper authorities.

The costs of this appeal are taxed to the defendant for which execution may issue.

DROWOTA, BIRCH and HOLDER, JJ., concur.

REID, J., dissents with separate dissent.

---

ment alone shall be held by a new jury empaneled for said purpose."

7. The Mississippi cases relied on by the defendant, *e.g., Wilcher v. State,* 635 So.2d 789 (Miss.

1993), are specifically predicated on an interpretation of state law that is not controlling on this Court.

REID, Justice, dissenting.

I dissent from the majority's holding that the jury's consideration of the invalid aggravating circumstance was harmless error. Though "not every imperfection in the deliberative process is sufficient, even in a capital case, to set aside a ... judgment, the severity of the sentence mandates careful scrutiny in the review of any colorable claim of error." *Zant v. Stephens,* 462 U.S. 862, 886, 103 S.Ct. 2733, 2747, 77 L.Ed.2d 235 (1983).

The facts of this case show that the victim was on his way to a motel room with the defendant's girlfriend when he was shot by the defendant. The evidence specifically showed that the victim and David Hippen drove in a van into downtown Memphis to find a motel room and solicit female companionship. At Raiford's Lounge, two women, Barbara Lee and Renita Tate, agreed to accompany them and got into the van. Lee had been at the lounge with the defendant who was her boyfriend, and with two other men, Bruce Wright and Terry Yarber. The two women, the victim and Hippen then drove to the parking lot of the Lorraine Motel where the victim "started to give one of the women a $100 bill to rent two rooms." *State v. Boyd,* 797 S.W.2d 589, 592 (Tenn. 1990), *cert. denied,* 498 U.S. 1074, 111 S.Ct. 800, 112 L.Ed.2d 861 (1991). While it was being discussed who would go in to rent the rooms, Wright, Yarber, and the defendant drove up and parked next to the van. The circumstances of the murder are described in the opinion on the direct appeal of this case as follows:

> Defendant stepped into the van on the passenger side behind the driver's and passenger's seats. He then pointed a pistol toward Hippen's face and said, "I want your money or I'm going to kill you." He snatched the $100 bill from [the victim's] hand. Hippen gave defendant his wallet, which contained $30.

> As defendant leaned over Hippen, [the victim] grabbed his arm and shoved it onto the console. Defendant fired a shot and the three men began to struggle over the gun. As the victim started the van and tried to drive away, the defendant "emp-

tied" his gun at him. Injured, [the victim] fell from the van ... [and died].

*Id.* The defendant was charged with felony murder, and a sentence of death was sought based on the aggravating factors of creating a risk of death to persons other than the victim, killing during the perpetration of a felony, and having a prior conviction for a violent felony. The jury rejected the danger of risking death to others as an aggravating factor and based the sentence of death on felony murder and the conviction of a prior violent felony.

In *State v. Middlebrooks,* 840 S.W.2d 317 (Tenn.1992), *cert. dismissed,* 510 U.S. 124, 114 S.Ct. 651, 126 L.Ed.2d 555 (1993), the Court found the use of felony murder as an aggravator when the conviction is based on felony murder, unconstitutional:

> We have determined that in light of the broad definition of felony murder and the duplicating language of the felony murder aggravating circumstance, no narrowing occurs under Tennessee's first-degree murder statute. We hold that, when the defendant is convicted of first-degree murder solely on the basis of felony murder, the aggravating circumstance set out in Tenn.Code Ann. §§ 39–2–203(i)(7) (1982) and 39–13–204(i)(7) (1991), does not narrow the class of death-eligible murderers sufficiently under the Eighth Amendment to the U.S. Constitution, and Article I, § 16 of the Tennessee Constitution because it duplicates the elements of the offense. As a result, we conclude that Tenn.Code Ann. § 39–2–203(i)(7) is unconstitutionally applied under the Eighth Amendment to the U.S. Constitution and Article I, § 16 of the Tennessee Constitution where the death penalty is imposed for felony murder.

*Id.* at 346. All agree that in this case, the jury's use of felony murder as an aggravating factor was a violation of the Eighth Amendment to the United States Constitution and Article I, Section 16 of the Tennessee Constitution. Nonetheless, the majority affirms the sentence of death on the finding that "beyond a reasonable doubt that the verdict would have been the same had the jury given no weight to the invalid aggravating factor." Majority Opinion at 562.

The United States Supreme Court has held that "in a weighing State infection of the process with an invalid aggravating factor might require invalidation of the death sentence." *Stringer v. Black,* 503 U.S. 222, 231, 112 S.Ct. 1130, 1136, 117 L.Ed.2d 367 (1992). It has also held that "under such circumstances a state appellate court could reweigh the aggravating and mitigating circumstances or undertake harmless-error analysis" as long as the death sentence is not affirmed "without a thorough analysis of the role an invalid aggravating factor played in the sentencing process." *Id.*

This Court properly applied a harmless error analysis in *State v. Howell,* 868 S.W.2d 238 (Tenn.1993), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994). In *Howell,* the victim was a convenience store clerk who was shot once in the forehead at close range. The jury sentenced the defendant to death based on the aggravators of felony murder and three prior violent felony convictions (armed robbery, first-degree murder, and armed robbery and attempted first-degree murder). The mitigating evidence was that the defendant was brain damaged from four head injuries and grew up in a violent home environment. The Court stated:

> In order to guarantee the precision that individualized sentencing considerations demand and provide a principled explanation for our conclusion in each case, it is important, when conducting harmless error review, to completely examine the record for the presence of factors which potentially influence the sentence ultimately imposed. These include, but are not limited to, the number and strength of remaining valid aggravating circumstances, the prosecutor's argument at sentencing, the evidence admitted to establish the invalid aggravator, and the nature, quality and strength of mitigating evidence.

*Id.* at 260–61. The Court found that because this was not the defendant's first "cold-blood-ed execution-style murder", the prosecutor did not emphasize the felony murder aggravator, no additional evidence was introduced for the invalid aggravator, and no mitigating evidence of good character, it could conclude the sentence would have been the same had the jury given no weight to the invalid felony murder aggravating factor. The sentence of death was affirmed.

The constitutionally mandated purpose of the harmless error analysis set forth in *Howell,* is to insure that "beyond a reasonable doubt . . . the error complained of did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (Scalia, J., concurring). The Court is "obliged to determine whether there [is] reasonable doubt as to whether the constitutional error contributed to the jury's decision to impose the sentence of death." *Tuggle v. Netherland,* 516 U.S. 10, 15, 116 S.Ct. 283, 286, 133 L.Ed.2d 251 (1995) (Scalia, J., concurring).

My concurrence in *Howell* was based on the conclusion, after considering the factors, that it was beyond a reasonable doubt that charging the invalid aggravating circumstance did not affect the jury's decision to impose the sentence of death. *State v. Howell,* 868 S.W.2d at 270–71 (Reid, C.J., concurring).

Based on the *Middlebrooks* decision, the Court has required a remand for sentencing in 6 subsequent cases involving the invalid use of the felony murder aggravator.[1] In *Middlebrooks,* where a 14 year old boy was beaten while his hands were tied behind his back with a knife, brass knuckles and a stick, was urinated on and in his mouth, burned with a lighter, and among other brutal acts, had an "X" cut into his chest while he was alive, the Court found that even though the other aggravating circumstance of torture was amply proved, it could not conclude that the elimination of the aggravating circumstance of felony murder was harmless error

---

1. *See also State v. Branam,* 855 S.W.2d 563 (Tenn.1993)(there were no valid aggravators and consequently, the sentence was set at life imprisonment); *State v. Bigbee,* 885 S.W.2d 797 (Tenn. 1994)(The Court did not consider whether the error was harmless because the case was re-manded for resentencing on an unrelated error); *State v. Keen,* 926 S.W.2d 727 (Tenn. 1994)(though error under *Middlebrooks* was found, it was not necessary to conduct a harmless error analysis because remand for resentencing was required on other grounds).

beyond a reasonable doubt. *State v. Middlebrooks,* 840 S.W.2d at 317. In *State v. Evans,* 838 S.W.2d 185 (Tenn.1992), *cert. denied,* 510 U.S. 1064, 114 S.Ct. 740, 126 L.Ed.2d 702 (1994), where the defendant was convicted of killing a grocery store clerk who he knew with a single gun shot to the back of the head, the opinion notes only that the jury found "aggravating circumstances" and that under *Middlebrooks* the sentence is set aside and the case is remanded. In *Sparks v. State,* 1993 WL 151324, 1993 Tenn. Lexis 187, No. 03S01–9212–CR–00105 (Tenn. May 10, 1993)(not published), where the defendant was convicted of armed robbery of a liquor store during which he shot and killed a delivery man, the Court remanded the case for resentencing, stating,

> In prior cases, however, we have found harmless error analysis difficult to sustain in the absence of written findings by the jury concerning mitigating circumstances. *See, e.g., State v. Terry,* 813 S.W.2d 420, 424–25 (Tenn.1991). Considering the "heightened need for reliability in death cases," we refused in Terry to predict what the outcome of the case would have been in the absence of one of the aggravating circumstances. Similarly, in *State v. Pritchett,* 621 S.W.2d 127, 129 (Tenn.1981), we declined to "speculate" on what the jury's sentence would be when one of two aggravating circumstances was removed from consideration.

The current sentencing statute, T.C.A. § 39–13–204(g), like its predecessor, T.C.A. § 39–2–203(g), requires the jury to engage in a careful weighing process, balancing specified aggravating circumstances against any mitigating circumstances in the record. But, also like its predecessor, it does not require the jury to report in its verdict what mitigating factors were considered. Without a sufficient basis for reweighing the evidence in the record, we are disinclined to speculate in this instance about what verdict the jury might have returned based on proof of a single aggravating circumstance. Certainly, we cannot say that in the absence of the felony-murder aggravating circumstance, there is proof beyond a reasonable doubt that the defendant should be sentenced to execution.

*Id.* at 3–4. In *State v. Bane,* 853 S.W.2d 483 (Tenn.1993), the defendant was found guilty of premeditated murder and felony murder. The evidence showed a premeditated murder and robbery in which the victim was beaten, cut, strangled, gagged, and placed in a tub with a plastic bag over his head. The jury sentenced the defendant to death finding the aggravators of torture and felony murder. The Court held that *Middlebrooks* required that a jury reconsider the evidence "even though the evidence amply supports the aggravating circumstance of the murder to be especially heinous, atrocious, or cruel in that it involved torture or depravity of mind." *Id.* at 490. In *State v. Smith,* 857 S.W.2d 1 (Tenn.1993), the defendant and an accomplice during the robbery of a store operated by an elderly couple, knocked down the man and fatally shot the woman when she resisted the robbery. Though other error also required resentencing, the Court stated, "The *Middlebrooks* rule establishes that elimination of the [felony murder aggravator] requires the jury to reconsider the evidence to determine if the sentence of death is appropriate in this case." *Id.* at 25. In *Hartman v. State,* 896 S.W.2d 94 (Tenn.1995), the victim was sixteen years old when she was kidnapped, raped, killed by four blows to the head, and raped again. In doing the harmless error analysis, the Court stated that though no additional evidence was introduced in support of the invalid aggravator, the prosecutor did not emphasize the invalid aggravator, and there was only minimal proof of mitigating circumstances, because the remaining aggravator of the heinous, atrocious or cruel nature of the offense was supported by testimony which was contested, the Court was "unable to conclude that the sentence would have been the same had the jury given no weight to the invalid aggravator." *Id.* at 104. In *State v. Walker,* 910 S.W.2d 381 (Tenn.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 88, 136 L.Ed.2d 45 (1996), the victim was shot several times while sitting in her car in her driveway; she bled to death at the hospital. The defendant thought the victim would be carrying a lot of money. The jury found the defendant not guilty of premeditated murder, but guilty of

felony murder and sentenced the defendant to death based on the aggravators of felony murder, and the existence of a previous conviction of a violent felony (voluntary manslaughter). The Court found that the mitigating evidence was "inadequate" to overturn the sentence, but that the "prior violent felony aggravator was not nearly as positive" as that of armed robbery, first degree murder, and attempted first degree murder, found in *Howell. Id.* at 398. The Court remanded the case for resentencing.

On the other hand, the high standard for harmless error analysis set forth in *Howell* has been significantly compromised in some cases. For instance, in *State v. Cazes,* 875 S.W.2d 253 (Tenn.1994), *cert. denied,* 513 U.S. 1086, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995), the victim, a sixty-eight year old woman, was killed by blows to the head, raped and bitten. The evidence was inconclusive as to whether the victim lost consciousness immediately or not. The victim and the defendant knew each other, though the relationship between the defendant and the victim was not shown in the record. The jury sentenced the defendant to death based on the aggravators of felony murder, previous convictions of violent felonies (assault and aggravated rape), and an especially heinous, atrocious, or cruel murder in that it involved torture or depravity of mind. The Court affirmed the sentence stating that the other two aggravators were strongly supported by the evidence, no additional evidence was introduced in support of the invalid aggravator, the prosecutor did not emphasize the invalid aggravator, and the mitigation evidence of the defendant's childhood and work history did not outweigh the valid aggravating circumstances. In *State v. Nichols,* 877 S.W.2d 722 (Tenn.1994), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995), this Court found a *Middlebrooks* error to be harmless stating that the defendant had committed five similar rapes in the months before the murder, no inadmissible evidence was introduced to establish the invalid felony-murder aggravator, the State did not put a great emphasis on the fact of the felony, and the mitigating proof was contested by the State. In *Nichols,* the defendant confessed and testified to raping the victim.

The death resulted from the defendant's hitting the victim with a two-by-four during the struggle; the victim died two days later. The defendant expressed remorse. I dissented from the Court's conclusion that the allowance of the jury to use the felony murder aggravator was harmless error because the State failed to prove beyond a reasonable doubt that the jury was not influenced by the invalid aggravating circumstance. Indeed, the record suggested the opposite conclusion:

> The State relied on two aggravating circumstances to support the death penalty—previous convictions for aggravated rape, and the fact that the murder occurred during the commission of a violent felony. The jury was instructed to decide whether the aggravating circumstances were supported by the evidence, and whether they outweighed the mitigating evidence. At the sentencing hearing, evidence of the aggravating circumstances was offered, which included substantial emphasis on the circumstances of the crime itself. Evidence of mitigating circumstances was offered from the defendant, his family, coworkers, and friends as to his character, work background and attitude, and family history. He also submitted the testimony of a clinical psychologist who had diagnosed the defendant as having intermittent explosive disorder. The State's closing argument emphasized the felony murder aggravating circumstance at least as much as the aggravating circumstance of prior convictions. . . . [The] initial return of the juror death penalty verdict form . . . [did not cite] aggravating circumstances concerning the defendant's record of convictions.
>
> . . . There is at the very least a reasonable possibility that the injection of the invalid felony murder aggravating circumstance into the weighing process by the jury contributed to the death sentence. . . .

*Id.* at 743–44 (Reid, C.J., dissenting). In *State v. Smith,* 893 S.W.2d 908 (Tenn.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 99, 133 L.Ed.2d 53 (1995), the victim was an elderly woman who had been beaten, raped, her throat had been cut, and she had been drowned in the bathtub. The jury sentenced

the defendant to death based on the aggravators of felony murder, previous convictions of violent felonies (robbery with a deadly weapon, assault with intent to commit first-degree murder, and aggravated rape), and the nature of the murder as especially heinous, atrocious, or cruel. The mitigating evidence was that the Defendant was mentally retarded. Because the evidence supported the remaining aggravators, no additional evidence was introduced in support of the invalid aggravator, and little emphasis was placed on the robbery by the prosecutor, the Court affirmed the sentence of death. In *Smith*, I dissented, stating,

> In this case, although the two remaining aggravating circumstances were proven, and no additional evidence was admitted in support of the invalid aggravating circumstance, the evidence of mental retardation is a strong mitigating factor whose weight could well be more persuasive against two aggravating circumstances than three. Because the existence of substantial mitigating evidence forces the jury in this case to make a very subjective decision as to weight, the State, which has the burden of proof, cannot show beyond a reasonable doubt that the ultimate decision to execute the defendant was not *influenced* by the submission of the invalid aggravating circumstance; therefore, the submission of this circumstance was not harmless error, and resentencing is required.

*Id.* at 932 (Reid, J. concurring in part & dissenting in part).

Sometimes, like in *Howell*, the finding of harmless error is justified. For instance, in *Barber v. State*, 889 S.W.2d 185 (Tenn.1994), *cert. denied*, 513 U.S. 1184, 115 S.Ct. 1177, 130 L.Ed.2d 1129 (1995), the victim who was seventy-five years old and in bad health, was killed by multiple blows to the head. She had bruises on her hands which were caused when the victim attempted to protect herself from the blows, and the evidence showed that the victim was alive and conscious during the beating. The defendant also made comments to others regarding the killing indicating the willfulness of his actions. The jury based it's sentence of death on the felony murder aggravator and on the fact

that the murder was especially heinous, atrocious or cruel in that it involved torture or depravity of mind. Because the prosecutor mentioned the felony murder aggravator only once, no additional evidence was introduced to support the invalid aggravator, and no strong mitigating evidence was introduced, the Court found the error harmless. Though noting my disagreement with the analysis of the majority opinion, I concurred in the judgment that the sentence be affirmed. And in *State v. Hines*, 919 S.W.2d 573 (Tenn.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 133, 136 L.Ed.2d 82 (1996), the victim was stabbed multiple times and at the time of death the victim was sexually brutalized. The jury sentenced the defendant to death based on the aggravators of felony murder, prior convictions (assault in the first degree) and the murder was especially heinous, atrocious, or cruel. In mitigation, the defendant introduced evidence of a bad childhood home environment, psychological problems, and his good behavior while in prison. The Court noted that the defendant was "found guilty of felony murder solely on the basis of armed robbery" and that "two felonies, larceny and rape, in addition to robbery, were used to support the felony murder circumstance." *Id.* at 583. The Court concluded that the felony murder aggravators, therefore, did perform the narrowing function required under the constitution. Doing a harmless error analysis for the portion of the felony murder aggravator attributable to the robbery, the Court found the error harmless because the remaining aggravating circumstances were strongly supported, the prosecutor did not emphasize the invalid aggravator and the evidence of mitigation did not outweigh the aggravators. Though I dissented on the basis of other significant errors, including the trial court's rejection of the plea agreement reached between the defendant and the District Attorney General's office, I would agree that the use of the invalid aggravator was harmless error under the record in that case.

However, comparison of the facts and circumstances of *Howell* and those in this case indicate a further lessening of the standard. The murder in this case resulted from an altercation based on jealousy. There was an

argument followed by a fight and then a shooting. The only valid aggravator relied on by the jury is the prior conviction for second degree murder. The mitigating circumstances offered by the defendant are that he was sorry the victim had been killed, he did not intend to rob or shoot the victim, and the killing had happened because the victim pulled a gun on him. The evidence in the record is simply not persuasive enough to assume that without the consideration of the felony murder aggravator, the jury would have reached the same conclusion. In my view, the admission of the invalid circumstance was not harmless error under the *Howell* analysis.

> The issue is not the extent to which the aggravating and mitigating circumstances were supported by the evidence or whether the aggravating circumstances outweighed the mitigating circumstances. A finding that the evidence in support of the valid aggravating circumstance was overwhelming and the evidence in mitigation was meager may, ... support the jury's finding that beyond a reasonable doubt the aggravating circumstance outweighed the mitigating circumstances, but it does not necessarily follow that the jury was not influenced by the invalid aggravating circumstance.

*State v. Howell*, 868 S.W.2d 238, 269 (Tenn. 1993) (Reid, C.J.concurring). "[I]n all cases where the Court must make a subjective decision regarding the effect of the aggravating circumstance," a finding of harmless error is inappropriate. *Id.* at 268. In my view, the finding of harmless error cannot be based on objective facts in this case and, therefore, must be a subjective conclusion.

I would remand the case for resentencing.